UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

|  |  |
|---|---|
| ROOFERS' PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DXC TECHNOLOGY COMPANY, MICHAEL J. SALVINO, JOHN SWEENEY, KENNETH P. SHARP, and ROBERT F. DEL BENE,<br><br>Defendants. | Case No.  1:24-cv-01351-LMB-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ....................................................................................... 1

II.  STATEMENT OF ALLEGED FACTS .......................................................................... 3

III.  ARGUMENT .................................................................................................................. 5

A.  NSHEPP SHOULD BE APPOINTED LEAD PLAINTIFF ............................................ 5

    1.  NSHEPP Is Willing to Serve as a Class Representative ......................................... 6

    2.  NSHEPP is the Most Adequate Plaintiff Within the Meaning of the PSLRA ...... 10

        a.  NSHEPP Has the "Largest Financial Interest" in the Action. .................. 10

        b.  NSHEPP Otherwise Satisfies the Requirements of Rule 23 ...................... 11

    3.  The Presumption Favoring NSHEPP Cannot Be Rebutted ................................. 15

B.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 15

IV.  CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)........................................................................................................9

*Chamblee v. Terraform Power, Inc.*,
  No. CV PX 16-981, 2016 WL 4039178 (D. Md. July 28, 2016)............................................11

*Edwards v. McDermott Int'l, Inc., et al.*,
  No. 4:18-cv-04330 (S.D. Tex.) ......................................................................................8, 14

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................................................13

*Hirtenstein v. Cempra, Inc.*,
  No. 1:16CV1303, 2017 WL 2874588 (M.D.N.C. July 5, 2017) ...........................................11

*In re BP p.l.c. Securities Litigation*,
  4:10-md-02185 (S.D. Tex.).............................................................................................10

*In re Braskem S.A. Sec. Litig.*,
  15 Civ. 5132 (PAE) *et al.*, 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015)...............................13

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006)................................................................................13

*In re Emergent Biosolutions Inc. Securities Litigation*,
  No. 8:21-cv-00955 (D. Md.) ..........................................................................................8, 14

*In re Microstrategy Sec. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................................15

*In re MINISO Group Holding Limited Securities Litigation*,
  1:22-cv-09864 (S.D.N.Y.) ..............................................................................................9, 14

*In re Royal Ahold Naamloze Vennootschap Securities & Erisa Litigation*,
  219 F.R.D. 343 (D. Md. 2003)..........................................................................................13

*Johnson v. Pozen Inc.*,
  No. 1:07CV599, 2008 WL 474334 (M.D.N.C. Feb. 15, 2008) .............................................12

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................15

*Knurr v. Orbital ATK, Inc.*,
220 F. Supp. 3d 653 (E.D. Va. 2016) ..................................................................13

*Lax v. First Merchants Acceptance Corp.*,
No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)................................................10, 11

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010).....................................................................................................9

*Nova Scotia Health Employees' Pension Plan* v. *BP, plc, et al.*, No. 4:13-cv-
03397 (S.D. Tex.)...................................................................................................9

*Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v.*
*Emergent Biosolutions Inc.*,
No. PWG-21-1189, 2021 WL 6072812 (D. Md. Dec. 23, 2021) ...........................................11

*Ramos v. Comerica Incorporated, et al.*,
2:23-cv-06843-SB-JPR (C.D. Cal.) ...................................................................8, 14

*Rice v. Genworth Fin. Inc.*,
No. 3:17CV59, 2017 WL 3699859 (E.D. Va. Aug. 25, 2017) .................................12

*Tchatchou v. India Globalization Cap., Inc.*,
No. 8:18-CV-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019)................................11

**Statutes**

15 U.S.C. §78j(b).................................................................................................8, 10, 14

15 U.S.C. §78u-4 ....................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

**Rules**

Fed. R. Civ. P. 23................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995)......................................................................2, 13

The Nova Scotia Health Employees' Pension Plan ("NSHEPP") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing NSHEPP as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons or entities that purchased or otherwise acquired shares of DXC Technology Company ("DXC") common stock between May 26, 2021 and May 16, 2024, inclusive (the "Class Period"); and (2) approving proposed NSHEPP's selections of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The initial complaint (ECF 1) (the "Complaint") in the above-captioned action (the "Action") alleges that DXC, Michael J. Salvino, John Sweeney, Kenneth P. Sharp, and Robert F. Del Bene (altogether, the "Defendants") defrauded investors in violation of Exchange Act §§10(b) and 20(a), causing DXC investors, including NSHEPP, to incur significant losses following the disclosure of the alleged fraud, which caused the prices of DXC securities to fall sharply, damaging NSHEPP and the Class members.

Pursuant to the PSLRA, under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')." The PSLRA creates a rebuttable presumption favoring the movant that, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rule of Civil Procedure". 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

1

NSHEPP believes itself to be the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.  During the Class Period, NSHEPP: (1) purchased or acquired 32,600 shares of DXC common stock; (2) expended $1,006,210 on DXC common stock; (3) retained all of its shares of DXC common stock; and (4) incurred losses of approximately $412,088 calculated on a first-in, first-out ("FIFO") basis, or $264,458 calculated on a last-in, first-out ("LIFO") basis.  *See* Declaration of Matthew L. Tuccillo in Support of Motion ("Tuccillo Decl."), Exhibit ("Ex.") A.  Accordingly, NSHEPP believes that it has the largest financial interest in the relief sought.

Beyond its considerable financial interest, NSHEPP also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members, and it will fairly and adequately represent the Class's interests.  As a sophisticated institutional investor, NSHEPP is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  Indeed, Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members.  *Id.* For this reason, courts in the Fourth Circuit strongly prefer appointment of institutional investors to lead complex securities class actions.  Moreover, NSHEPP has considerable securities litigation experience, including serving as court-appointed PSLRA lead plaintiff in pending securities class action lawsuits involving Emergent Biosolutions, Inc. ("Emergent"), in which a $40 million class-wide settlement was recently submitted for preliminary approval in the District of Maryland, as well as McDermott International, Inc. ("McDermott"), Comerica Incorporated ("Comerica"), and

2

MINISO Group Holding Limited ("MINISO"). NSHEPP has also successfully pursued and resolved individual securities opt-out litigation involving BP p.l.c. ("BP") that resulted in a favorable, confidential monetary settlement.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, NSHEPP has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume and discussed below. Over a multi-year period, Pomerantz successfully represented NSHEPP in its individual securities litigation involving BP, and the firm currently serves as court-appointed Lead Counsel representing NSHEPP in the Emergent, McDermott, Comerica, and MINISO securities class action lawsuits. NSHEPP and Pomerantz have a track record of success in zealously pursuing these lawsuits and seeking to advance class member interests.

NSHEPP respectfully asks the Court to enter an Order appointing it Lead Plaintiff for the Class and approving its selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF ALLEGED FACTS

Based in Ashburn, Virginia, DXC is an information technology ("IT") services and consulting company. ¶2.[1] Founded in 2017, DXC offers a portfolio of services to help clients modernize their IT systems, including consulting, applications services, and infrastructure services. *Id.* Since 2017, DXC has acquired several other companies purportedly to help expand its capabilities and market reach. *Id.* Prior to the start of the Class Period, DXC announced that it had begun a new "transformation journey" that would position DXC for the future. *Id.*

---

[1]    All "¶" cites herein are to the Complaint's numbered paragraphs. The Complaint was filed by another investor.

The Class Period begins on May 26, 2021, when DXC announced its year-end financial results for 2021 and Defendants told investors that it had "changed the direction of [its] revenues and margin from declining to improving." ¶3. Thereafter, throughout the Class Period, Defendants misrepresented DXC's ongoing "transformation journey" and its ability to integrate previously acquired companies and business systems. ¶4. While touting DXC's ongoing success in implementing that integration, Defendants repeatedly stressed its commitment to reducing restructuring and transaction, separation, and integration ("TSI") costs in order to increase its free cashflow and "unleash [its] true earnings power." *Id.*

These and similar statements made by Defendants during the Class Period were materially false and misleading. ¶5. In truth, Defendants knew or recklessly disregarded, and concealed from investors, that DXC was only able to reduce its restructuring and TSI costs by limiting its integration efforts. *Id.* As a result of Defendants' misrepresentations, shares of DXC common stock traded at artificially inflated prices throughout the Class Period. *Id.*

The truth began to emerge after the market closed on August 3, 2022, when DXC reported disappointing first quarter 2022 results, despite having reiterated its guidance just six weeks prior. ¶6. DXC blamed its poor performance on the fact that its "cost optimization efforts have moved at a slower pace than anticipated." *Id.* These disclosures caused the price of DXC common stock to decline by 17%, from $31.52 per share to $26.15 per share. *Id.* Despite these disclosures, Defendants continued to misrepresent DXC's purported transformation and successful reduction in restructuring and TSI costs to "transition[] DXC from stability to higher performance." *Id.*

Then, on December 20, 2023, DXC announced the sudden departure of Defendant Salvino, its CEO and Chairman of the Board, effective December 18, 2023. ¶7. This disclosure caused the price of DXC common stock to decline by 12%, from $25.03 per share to $21.99 per share. *Id.*

4

Months later, on May 16, 2024, DXC's new CEO admitted that "the previous restructurings did not set a real, clean, solid, fully integrated baseline for profitable growth" because the systems that were acquired over time were "never integrated, never deduped," and admitted that DXC was "not [a] fully functional organization."  ¶8.  DXC also announced it would need to spend an additional $250 million to achieve the restructuring and integration process it falsely claimed to have been successfully implementing during the Class Period.  *Id.*  These disclosures caused the price of DXC common stock to decline nearly 17%, from $19.88 per share to $16.52 per share. *Id.*

## III.  ARGUMENT

### A.  NSHEPP SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of the PSLRA notice of an action (the "Notice"), which in this case was published on August 2, 2024 (*see* Tuccillo Decl., Ex. B).  *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of notice publication (30 days after the motion deadline), or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i) & (ii).  NSHEPP's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')."  *See* 15 U.S.C. §78u-4(a)(3)(B)(i). NSHEPP is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). As set forth below, NSHEPP satisfies all three of these criteria and thus believes that it is entitled to the rebuttable presumption that it is the most adequate plaintiff within the meaning of the PSLRA. Specifically, NSHEPP, a sophisticated institutional investor, and moreover a pension fund, that is willing to serve as lead plaintiff, has the largest financial interest in the Action to its knowledge and otherwise strongly satisfies the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, NSHEPP respectfully urges the Court to appoint it to serve as Lead Plaintiff overseeing this Action.

### 1. NSHEPP Is Willing to Serve as a Class Representative

On August 2, 2024, counsel for the initial plaintiff in the Action caused the statutorily required Notice of this Action to be published via *Business Wire* pursuant to §21D(a)(3)(A)(i) of the PSLRA, which announced that the Action had been filed against Defendants and advised investors in DXC common stock that they had until October 1, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Tuccillo Decl., Ex. B. NSHEPP has filed the instant motion pursuant to the Notice and has attached a Certification signed on its behalf by its Chief Executive Officer attesting that NSHEPP is willing to serve as representative for the Class and to provide testimony at deposition and trial, if necessary. *See* Tuccillo Decl., Ex. C. Under the PSLRA, NSHEPP's actions were timely and legally sufficient. Accordingly, NSHEPP readily satisfies the first requirement to serve as Lead Plaintiff for the Class.

NSHEPP is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA.  NSHEPP is a comprehensive, defined benefit pension plan established in 1961 and jointly sponsored by Health Association Nova Scotia and four unions.  NSHEPP is one of the largest registered pension plans in the Canadian Province of Nova Scotia, serving over 56,000 people, including 38,000 active members who work for 93 participating employers at over 150 sites throughout Nova Scotia, as well as 16,000 pensioners who receive a monthly income from NSHEPP and over 1,700 former employees who have elected a deferred pension.  NSHEPP's oversight and administration is well-defined, multitiered, and robust.  It is administered by a Board of eight Trustees, half selected by Health Association Nova Scotia and half selected by the four unions to which its members belong.  The Board of Trustees is responsible for the Plan's overall operation, with day-to-day operations overseen by a Chief Executive Officer (who signed NSHEPP's Certification).  As of December 2023, NSHEPP had over CAD $10.9 billion in assets, which it invests in a diversified manner, including over 40% in equities.

Significantly, NSHEPP is highly experienced in the prosecution of complex securities claims, both as a court-appointed PSLRA lead plaintiff in four securities class actions and in an individual capacity in securities opt-out litigation.  NSHEPP's track record in prior, hard-fought, multi-year securities lawsuits – including its recently-achieved $40 million settlement within this Circuit – demonstrates its competence, patience, and readiness to vigorously pursue a class-wide recovery in this Action.  Specifically:

- NSHEPP serves as court-appointed PSLRA co-lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities fraud claims against Emergent and its CEO / President, and its SVP / Head of Contract Development and

Manufacturing. NSHEPP successfully opposed the motion to dismiss its 225-page amended complaint, which was largely denied in September 2023. NSHEPP's motion for class certification was granted in June 2024. After considerable discovery, including production of 120,000 defendant and third party documents, a full-day mediation, and extensive post-mediation negotiations, NSHEPP recently moved for preliminary approval of a $40 million class-wide settlement. *See In re Emergent Biosolutions Inc. Securities Litigation*, No. 8:21-cv-00955 (D. Md.).

• NSHEPP serves as court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities fraud claims arising under the Exchange Act §10(b) against McDermott, its CEO / President, and its CFO. NSHEPP oversaw hard-fought litigation of class-wide claims seeking recovery of up to $2 billion+ successfully through a corporate bankruptcy, past two motions to dismiss, and through all of fact discovery involving production of over 450,000 defendant and third party documents and 40 fact depositions, after securing court rulings that compelled Defendants to run 200+ plaintiff-authored search terms across 50 plaintiff-selected custodians and to review 1.29 million search hit documents and compelled multiple third parties to sit for depositions. The court partially granted NSHEPP's class certification motion in June 2024, and the lawsuit is now stayed pending the parties' cross-appeals under Rule 23(f). *See Edwards v. McDermott Int'l, Inc., et al.*, No. 4:18-cv-04330 (S.D. Tex.).

• NSHEPP is court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities claims against Comerica and certain of its officers. After an initial dismiss, NSHEPP has filed further amended pleadings and is now litigating a second motion to dismiss. *See Ramos v. Comerica Incorporated, et al.,* 2:23-cv-06843-SB-JPR (C.D. Cal.).

8

• NSHEPP is court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities claims against MINISO, certain of its officers, its U.S. representatives, and, for certain claims, its underwriters. NSHEPP's amended complaint was dismissed with leave to amend, and a further amended pleading will be filed once the Court resolves reconsideration motion issues. *See In re MINISO Group Holding Limited Securities Litigation,* 1:22-cv-09864 (S.D.N.Y.).

• NSHEPP, represented by Pomerantz, successfully pursued individual claims within Multidistrict Litigation 2185 to recover its investment losses in BP common stock stemming from BP's 2010 Gulf of Mexico oil spill. Pomerantz's 35 institutional clients, including NSHEPP, survived three motions to dismiss and set ground-breaking precedent, including, *inter alia*: (1) the first rulings allowing foreign investors to pursue foreign law claims, seeking recovery for losses in a foreign company's foreign-traded securities, in a U.S. court since the decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), which barred application of the U.S. federal securities laws to securities traded outside the U.S.; (2) a decision rejecting BP's argument that the Securities Litigation Uniform Standards Act of 1998, which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, should be extended to foreign common law claims (and cause their dismissal); and (3) a ruling of first impression validating "holder claims" under English common law for investment losses incurred by retaining already-owned shares (as versus purchasing new shares) in reliance on a fraud, a theory of recovery barred under the U.S. federal securities laws since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). After nine years of hard-fought litigation, NSHEPP, along with Pomerantz's other clients, secured a confidential, favorable monetary settlement in Q1 2021. *See Nova Scotia Health Employees'*

9

*Pension Plan* v. *BP, plc, et al.*, No. 4:13-cv-03397 (S.D. Tex.); *In re BP p.l.c. Securities Litigation*, 4:10-md-02185 (S.D. Tex.).

In these litigations, NSHEPP has been represented by its choice of counsel here, Pomerantz. As such, NSHEPP has demonstrated a track record of diligence, tenacity, patience, and success in past securities litigation with Pomerantz as its chosen counsel.

NSHEPP has thus proffered evidence as to its *prima facie* suitability to serve as court-appointed PSLRA Lead Plaintiff overseeing this litigation.

### 2. NSHEPP is the Most Adequate Plaintiff Within the Meaning of the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). NSHEPP is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

### a. NSHEPP Has the "Largest Financial Interest" in the Action.

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). To the best of its knowledge, NSHEPP has the largest financial interest of any DXC investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Exchange Act §10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at \*5 (N.D. Ill. Aug. 6, 1997): (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period;

(3) the total net funds expended during the class period; and (4) the approximate losses suffered. In accord with other courts nationwide, these so-called *Lax* factors have been adopted and routinely applied by courts in the Fourth Circuit. *See*, *e.g.*, *Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at *4, *6-7 (D. Md. Dec. 23, 2021) (appointing NSHEPP to serve as co-lead plaintiff with Pomerantz as lead counsel); *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019 WL 1004591, at *4 (D. Md. Feb. 28, 2019).

During the Class Period, NSHEPP: (1) purchased/acquired 32,600 shares of DXC common stock; (2) expended $1,006,210 in net funds on DXC common stock; (3) retained all of its shares of DXC common stock; and (4) suffered a loss of approximately $412,088 calculated on a FIFO basis, or $264,458 calculated on a LIFO basis. *See* Tuccillo Decl., Ex. A. Thus, under the *Lax* factors, NSHEPP believes it has the largest financial interest among any potential lead plaintiff movants in this litigation, thereby entitling NSHEPP to a rebuttable presumption that it is the "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that it also satisfies the requirements of Rule 23.

### b.    NSHEPP Otherwise Satisfies the Requirements of Rule 23.

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that it is the "most adequate plaintiff," it must also demonstrate that it "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this stage of the inquiry, courts need only consider typicality and adequacy. *See Chamblee v. Terraform Power, Inc.*, No. CV PX 16-981, 2016 WL 4039178, at *2 (D. Md. July 28, 2016); *Hirtenstein v. Cempra, Inc.*, No. 1:16CV1303, 2017 WL 2874588, at *4 (M.D.N.C. July 5, 2017).

NSHEPP satisfies the threshold for Rule 23(a)(3) typicality. "The typicality requirement of the rule requires that a Lead Plaintiff suffer the same injuries as the class as a result of the

11

defendant's conduct and has claims based on the same legal issues." *Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008). NSHEPP's claims are typical of those of the Class members. Like all Class members, NSHEPP alleges that: (1) Defendants violated the Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning DXC; (2) NSHEPP and the Class members purchased or acquired DXC common stock during the Class Period at prices allegedly inflated by Defendants' misrepresentations or omissions; and (3) NSHEPP and the Class members were damaged upon the revelation of the truth about DXC's business and operations, which drove DXC's stock price downward. These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate NSHEPP's typicality under Rule 23(a)(3).

NSHEPP also satisfies the Rule 23(a)(4) adequacy requirement. "Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Pozen*, 2008 WL 474334, at *2; *see also Rice v. Genworth Fin. Inc.*, No. 3:17CV59, 2017 WL 3699859, at *7 (E.D. Va. Aug. 25, 2017). Here, NSHEPP has submitted a signed Certification declaring its commitment to protect the Class's interests. *See* Tuccillo Decl., Ex. C. NSHEPP has no conflicts of interest or antagonism with the Class of DXC investors it seeks to represent. NSHEPP's significant losses from its investments in DXC securities demonstrate that it has a sufficient interest in the outcome of this litigation that aligns with the interests of Class members.

NSHEPP is a large pension fund and a sophisticated institutional investor with significant assets under management and considerable securities litigation experience, including its achievement of a $40 million settlement recently presented for court approval in this Circuit. Its

12

service as Lead Plaintiff would satisfy the PSLRA's express legislative intent.  In enacting the PSLRA, Congress intended to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.  Congress noted the outsized marketplace presence of institutional investors as creating a powerful incentive on their part to ensure securities litigation is well-conducted.  *Id.* (noting that institutions held $9.5 trillion in total assets and 51% of the equity market when the PSLRA was passed and "have the most to gain from meritorious securities litigation").  Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members.  *Id.* (noting that pension funds held $4.5 trillion or nearly half of all institutional assets).  To this end, courts in this Circuit and throughout the country consistently recognize that Congress intended the PSLRA to place institutional investors like NSHEPP in charge of securities class actions, recognizing the clear advantages of doing so.  *See, e.g.*, *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 662 (E.D. Va. 2016) (stating that "appointing [an institutional investor] as lead plaintiff [. . .] promotes the PSLRA's purpose"); *In re Royal Ahold Naamloze Vennootschap Securities & Erisa Litigation*, 219 F.R.D. 343, 353 (D. Md. 2003) ("A recognized purpose of the lead plaintiff provision is to involve institutional investors in the prosecution of securities class action suits."); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 WL 5244735, at *5 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin.*

13

*Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

NSHEPP's track record in prior, hard-fought, multi-year securities litigations – as detailed above – demonstrates its competence and readiness to vigorously pursue recovery in complex securities class actions. NSHEPP has served since December 2021 as court-appointed PSLRA lead plaintiff in the *Emergent* securities fraud class action litigation, steering the claims past a motion to dismiss, deep into fact discovery, past class certification, and through an extended mediator-assisted resolution process to a $40 million class-wide settlement for which preliminary court approval is now being sought. NSHEPP has served since June 2019 as court-appointed PSLRA lead plaintiff in the $2 billion+ *McDermott* securities fraud class action litigation, steering the Exchange Act §10(b) claims through McDermott's bankruptcy, past two motions to dismiss, through fact discovery, into expert reports, and through a partial class certification, which is on appeal. NSHEPP has served since November 2023 as court-appointed PSLRA lead plaintiff in the *Comerica* securities class action litigation, where it is currently litigating a second motion to dismiss, after further amending the complaint. NSHEPP has served since November 2022 as court-appointed PSLRA lead plaintiff in the *MINISO* securities class action litigation, where it plans to file a further amended complaint. NSHEPP also successfully litigated individual opt out claims in the *BP* securities litigation, which established ground-breaking precedent over nine years, past three motions to dismiss, through extensive discovery, and to a mediation-assisted, favorable, confidential monetary settlement in Q1 2021.

14

### 3.    The Presumption Favoring NSHEPP Cannot Be Rebutted

The presumption favoring NSHEPP's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interest of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  NSHEPP's ability and desire to fairly and adequately represent the Class has been discussed above and cannot be credibly disputed.  NSHEPP is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class.

### B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See id.* §78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 438 (E.D. Va. 2000) ("[A] district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . ."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

NSHEPP has selected Pomerantz to serve as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions and recovered billions of dollars on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Tuccillo Decl., Ex.

D.  Pomerantz is based in New York, with offices in Chicago, Los Angeles, Paris, Tel Aviv, and London, and the firm regularly litigates federal securities fraud class actions in courts nationwide. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the U.S.  *Id.*  The Pomerantz Partner who will oversee this litigation, Matthew L. Tuccillo, has 25 years of relevant experience and has represented NSHEPP for over nine years, including as lead litigation counsel in the *Emergent*, *McDermott*, *MINISO*, *Comerica*, and *BP* litigations discussed herein.  He has served as lead counsel in litigating and recently resolving the *Emergent* class action for $40 million in this Circuit.  He regularly appears before courts nationwide in securities litigation matters similar to this Action.

Cohen Milstein is also well-qualified to serve as Liaison Counsel for the Class.  *See* Tuccillo Decl., Ex. E.  It has recovered billions of dollars for its clients in some of the largest and most complex securities class actions.  *See, e.g.*, *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRPMAN (C.D. Cal.) ($500 million settlement in the Countrywide mortgage-backed securities class action); *New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Group, plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.) (a $275 million settlement in an MBS class action against the Royal Bank of Scotland); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781 (HB) (S.D.N.Y.) ($335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks).  Additionally, Cohen Milstein's attorneys have extensive familiarity with the Local Civil Rules and practice norms of this Judicial District.

16

As a result of their extensive experience in litigation involving issues similar to those raised in the instant Action, NSHEPP's choice of counsel have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute this Action effectively and expeditiously. The Court may be assured that by approving NSHEPP's selection of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel, the Class members will receive the best legal representation available. Thus, NSHEPP respectfully urges the Court to appoint Pomerantz and Cohen Milstein to serve as Lead Counsel and Liaison Counsel, respectively, for the Class.

## IV.    CONCLUSION

For the foregoing reasons, NSHEPP respectfully requests that the Court issue an Order: (1) appointing NSHEPP as Lead Plaintiff for the Class; and (2) approving NSHEPP's selections of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:  October 1, 2024

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &**
  **TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Matthew L. Tuccillo
(*pro hac vice* application forthcoming)
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II

17

(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia
Health Employees' Pension Plan and Proposed
Lead Counsel for the Class*

18